Unknown Owners and Non-Record Claimants Defendant and Penalty. Arguing on behalf of the defendent and penalty, Mr. Adam Goodman. Arguing on behalf of the plaintiff and the plaintiff's family, Mr. Joel Hurtado. All right, General, you're both ready to proceed, both sides? Think counsel when you're ready. May it please the Court. My name is Adam Goodman, and my client is Advantage Financial Partners. Advantage Financial Partners borrowed some money from West Suburban Bank. They had a $10 million line of credit, and the $10 million line of credit was used to buy residential real property. And as it came to pass, there were about 25 properties, and Advantage defaulted on the line of credit, and West Suburban started foreclosing on the real properties. Unfortunately, West Suburban didn't stop foreclosing on the properties when the loan was paid in full. It seems to have kept on going, and as a result, Advantage believes, and alleged in DuPage County below, that there's a surplus of slightly more than $3 million. That is, Advantage's property should have been and should be returned to Advantage. Now, the trial court dismissed the surplus petition, without delving into its merits, on the grounds that the surplus petition was foreclosed by law of the case and res judicata and was filed too late. Did the case come up on appeal? Well, this is actually the fourth appeal in these cases, but it's the first and only one involving the surplus petition. So would it be law of the case? No, Your Honor. A surplus petition is a- Was never addressed before. Never. Okay. Right. There's been allusions in the facts section of the appellate brief. We discussed all three of the prior appeals, as well as all proceedings related to the prior appeals. West Suburban took the position in its appellee brief that some of that prior history was irrelevant. West Suburban also talked at some length about another case in Cook County, but nowhere in that other Cook County case, what we call the restitution case, was there any discussion of a surplus petition in no proceeding prior to the proceeding from which appeal is taken. Was it ever suggested that there was a surplus? Was a surplus ever sought? So how many days afterwards did the motion to reopen the case come? How many days afterwards? After the judgment. Well, I- In order to bring forth this surplus. Well, I don't- It's not clear where you should start counting from, right? There were judgments in 2008 and 2009 and 2010 in several dozen cases. The cases were scattered. Some were in Cook County. Some were in DuPage County. Some were in Kane County. Some were in Will County. They were in a variety of courtrooms. Then several years later, Advantage started filing 1401 petitions, and at West Suburban's request, all but one of these cases were transferred or consolidated before the same judge in DuPage happened. And then that judge denied the 1401 petitions, and then this court reversed. And then there were some proceedings on remand, and ultimately West Suburban dismissed its foreclosure cases. And then there were proceedings, extensive proceedings in the residue case, the Hinton Road Palatine case in Cook County. And there were two appeals taken in that case, the second of which was decided after the surplus petition was denied. And, in fact, we urged upon Judge Fullerton that he defer ruling on the surplus petition until after the second Cook County appeal was decided, because if we had lost the second Cook County appeal, it would have mooted that they were collaterally attacking the existence of the surplus. So we would have mooted this, the present issue. And, you know, one could even argue, as was pointed out in the briefs, that the surplus petition was filed too early. But analytically, I think if you take a step back, there's no time limit. A surplus petition is a post-judgment remedy to try and collect. It's no different from a citation to discover assets. It's no different from a wage garnishment summons, right? There's no time limit. If a judgment remains unpaid, the judgment creditor, typically the plaintiff, can issue a citation to discover assets at any time as long as the judgment is still valid. And if the judgment becomes stale, it can be renewed under state law. I believe it's up to two or three times for up to 20 years. Well, you argue that, as in the Taglinoff case, that the surplus petition is a new proceeding. Correct? Is that what you're saying? It's a post-judgment proceeding, and in many senses it's new, in the same way that a citation to discover assets or a 1401 petition is new. But isn't it a continuation of the appeal? Isn't it a continuation of the appeal? In many ways it is. Analytically, it's analogous to a citation to discover assets, or it's analogous to a 1401 petition, because but for the existence of a judgment or but for the existence of a surplus or but for the existence of a final order, I'm distinguishing final order from judgment. A judgment would be for money. A 1401 could attack an order that doesn't involve a judgment for money. There wouldn't be a subsequent or new proceeding. But the fact that the Supreme Court rules, such as Rule 105 and 106, require certain types of service, because it's viewed as a new proceeding, the fact that the appearances of counsel aren't necessarily, don't necessarily continue, but none of those things change the fact that if there's a judgment, I want to start with judgments and then expand outward, because I think it's easier to understand this with judgments because they happen much more frequently. If a plaintiff has a judgment, I owe one of you $10,000, and you sue me and get a judgment against me, and I ignore that judgment, I don't pay it, you're not under any obligation to issue a citation to discover my assets on any particular day or time. You're not under any obligation to issue a wage garnishment summons on my employer on any particular day and time. Sometimes years go by. Sometimes people sit on judgments. Yeah, but there was not a judgment entered in a surplus in this case. As a matter of fact, you filed some motions to vacate the dismissals and for further proceedings. The trial court dismissed those, and then you never filed a, you never filed an appeal. So how, I mean, that's, what you're talking about is a little different than what we have here. You didn't have judgment for that excess, for that surplusage, did you? No. They had judgments against us. Right. There are final judgments, there are final judgments in these foreclosures approving, orders approving sale and approving that the sale, you know, the sale was advertised properly and the, you know, the formalities associated with the sale exist, and approving the sales price is commercially reasonable. Correct. And those are the final judgments. That's no different than if any of you had a judgment against me for $10,000. West Suburban had judgments against Advantage. The problem for West Suburban is that those judgments total a little over $3 million more than West Suburban was owed by Advantage. And as a result, we have the right at common law, and as a result of statutory procedures that have been placed, you know, by the legislature or by the court system, we have the right to get our surplus, to collect our judgment, just as if West Suburban had a judgment against us for $3 million. But didn't you try to do that and it was denied? And then there was not an appeal filed. I mean, it didn't happen. No, we did not try and do that, Your Honor. The first time there was ever an attempt to do this was the decision from which appeal is taken below, which was in 2018. It's the first time anywhere you can look at the record. The record in this case is thousands and thousands and thousands of pages long. And there's other records from the two first district appeals, from the, quote, unquote, restitution case that resulted in a first district appeal that was abandoned. You can scour. It's probably upwards of 5, maybe even 10,000 pages. You will find no reference whatever to surplus until we launched a surplus petition in 2018. And we argued to Judge Fullerton below that our surplus petition was arguably premature and should be stayed pending the resolution of the second Cook County appeal, what I'll call Advantage 3, right? Now, Judge Fullerton had the discretion to disregard that argument. We're not challenging that. It's moot at this point. But we suggested to him that the judicial economy should cause him to defer consideration of our surplus petition on the merits because our surplus might evaporate. Had West Suburban won either Advantage 2 or Advantage 3, there would not be a surplus. But their unsuccessful collateral tax now makes the surplus ripe. So then you're, based upon what you're arguing right now, there's no race judicata issue. Correct. The fact that someone has, all right, so let's return to the much simpler, more conventional case. One of you has a judgment against me for $10,000, right? I damaged your car, let's say, supplication case. The fact that there was unsuccessful litigation somewhere else between me and you that was filed after you got that $10,000 judgment against me wouldn't afford me a defense to collection of that $10,000. But do you have a judgment for the surplus in this case? No, they have the judgment. I understand. Right. What we asked Judge Fullerton to do, what he declined to do based on race judicata law of the case, what we're asking you to reverse and remand to allow it to happen is to have a factual determination. Now, we feel this is ministerial. We've, you know, the electronic rule has stapled all of these judgments to the surplus petition. But, you know. To make a factual determination of what, counsel? That the surplus exists and we're entitled to it. And they might have defenses to it. I don't know what those defenses would be. But res judicata, collateral estoppel, law of the case are not defenses to the surplus petition. Defenses to the surplus petition might be things like, you know, discharge. Like, we've already paid you some of this. Or you've made arithmetic errors. Or, you know, as is alluded to in the briefs, there might be some dissension on remand about whether there's an interest rate. And if we're entitled to interest, whether we're entitled to interest of 5% under the Interest Act, or whether we're entitled to 9% under the Post-Judgment Act. You know, after all, the goose is sauce with the gander. They would be entitled to 9% interest against us. Maybe we should be entitled to 9% interest against them. Or maybe they could construct an equitable argument that is typically done, you know, in the federal courts. And in instances in state court where the Interest Act of the Post-Judgment Statute doesn't apply, like in, say, a damage calculation, maybe the T-bill rate for interest should apply, which would benefit them a lot because it's much lower than it has been for several years. So there's all kinds of issues that we can explore before Judge Fullerton or whoever is sitting in his stead on remand. But we didn't get there because of the holdings below. And those holdings are wrong. That does not mean they don't have other arguments. Perhaps they do. I haven't heard them yet. Analytically, this is a very simple case. I think the confusion below, and I think some of the confusion we're all having today, just stems from the fact that surplus petitions are unusual. And so people don't think about it. Fortunately, this doesn't come up very often. Surpluses are unusual, and when they are, usually the banks behave and remit them. But here we have a situation that's not explicitly contemplated by the statute. It hasn't been explicitly addressed by the case law. But it's quite simple analytically. They have $3 million of our money, and they should give it back to us. And we should be entitled to a hearing on the merits with regard to our belief that they have $3 million of our money. And none of res judicata or law of the case or too late or any of that, none of those ideas apply. Did the court indicate that it didn't have jurisdiction? Did the court indicate anything about jurisdiction? Well, I suppose the too late argument could be viewed as a jurisdictional finding. The transcript is in the record if you want to peruse the exact wording that the trial judge used. But I suppose the too late could mean I no longer have jurisdiction because more than 30 days have passed. And our position would be that that's just wrong, that this is no different from a citation or a wage garnishment or whatever, that as long as it sits out there. Moreover, there's two other reasons why arguably the clock hadn't even started ticking yet. One is the fact that West Suburban was still engaged in these collateral attacks in Advantage 3 at the time we filed the surplus petition. But the second reason is that the second reason escapes me at the moment. I had an idea, and then I forgot. It happens to all of us, counsel. Well, the motion to reopen the case was denied down below, correct? That's correct. But the motion to reopen wasn't necessary. That was the clerk. We need to get a hearing date. And that's a function of the Odyssey, Illinois, or the DuPage County computer system. The citations, which are common, wage garnishments, which are common. There's a computer function, you know, a line where you can get a date and so forth for a hearing. Surplus petitions, there isn't a code. So we contacted the clerk's office and was instructed to sort of put a cover letter on our surplus petition by, you know, doing a motion to reopen with a surplus petition attached. But rights can't possibly attach to that. I mean, substantive rulings can't possibly be, you know, rise or fall based on the vagaries of the computer system or the requirements. The fact that the judges of the Circuit Court of DuPage or the 18th Judicial Circuit have delegated to the clerk's office and the computer system because of the volume. Okay, so a lot of what you're saying, this was not a motion to reopen the case. You did not really want to reopen the case. What you wanted was simply to have a hearing as to whether or not the original judgment was paid in full or overpaid. Is that a fair statement? Yes, I mean judgments. It's complicated by the fact that there's all these cases and they were consolidated. Right. They were all consolidated and a judgment was entered. And you're saying what you really were. Well, 25 judgments were entered, but yeah. Okay. The running total results in a surplus. Right. And so what you wanted to do was determine whether or not those judgments had been paid in full or overpaid. You did not seek to reopen the litigation. Correct. Coming to the judgment. Correct. Our position was that West Suburban, the sum total of the proceedings, which all occurred before the Supreme Court's consolidation order, resulted in overpayment to West Suburban to the tune of a little bit more than $3 million, and that we wanted the judge to agree with us and order them to give us the $3 million, and perhaps there would be further proceedings about interest and so forth. Thank you. Good morning, Your Honors. May it please the Court, my name is Joel Bertocchi, and I represent West Suburban Bank, the appellee in this case. This case is dead. It is as dead as a case can be, and it is dead for some of the classic procedural reasons that cases die. It is dead because the arguments that the case is dead, the arguments that are made were held to be, that they want to make were held to be precluded on two grounds, law of the case and res judicata. How is it law of the case? It's law, well, you have to understand, Your Honor, what was ruled on below was a motion to reopen. Mr. Goodman says we didn't really want to reopen the case, but that's the motion they filed, and that's the motion we present. But don't we go to substance, not form? Not really, Your Honor. When you file a motion, you're asking for relief. If I filed a motion for a citation to discover assets, does that make it a motion or is it a citation? It's a motion that you need leave of court of to do it. Now, you may be entitled to have that motion granted, but that's not what's at issue in this case. Of the three issues that Judge Fullerton decided, only one of them relates to the actual surplus argument, and that's res judicata, and I'll get to that. But, and I don't know what conversation was had with the clerk's office. There's nothing in the record about that. What's in the record is a motion to reopen, which is probably what they had to file because the case had been dead for three years. So they filed that, and they asked to do this in their motion to do the same thing that they had asked to do in 2015 and lost. They wanted to reopen the case, and they wanted to get, conduct these further proceedings to see whether there's money. That's why it's law of the case. Now. So did the Court have jurisdiction? That's a different argument, but no, the Court. And the Court also held that it did not have jurisdiction because it was too late under 1203. If the Court said he didn't have jurisdiction, but he went ahead and ruled. Right. He dismissed the petition, right? He did not. He did not entertain the surplus petition. The surplus petition was never sued. But he denied the motion to reopen. He denied the motion to reopen on three grounds. So don't you have to have jurisdiction in order to deny a motion? No, not if the reason you're denying the motion is the one of the reasons is because you don't have jurisdiction. And it's true. He could have stopped there. But he didn't. He went on to rule on the alternative theories, probably for the benefit of you three. So if you disagree that he did have jurisdiction, there are two other fatal problems. But in fact, he held that he didn't have jurisdiction because he had ruled because it was far too late under 1203. It was three years instead of 30 days. The advantages in a box here, Your Honor, and this goes to some degree to the surplus petition, which, again, was not ruled on, was not served, was not filed. It was attached as an exhibit. You want to file a citation to discover assets, you can't just attach it as an exhibit to a motion or a procedure. And let me get, before I go on with that, with the box there, let me address one of Judge Justice Showstock's questions about judgment. Because in the exchange you have with Mr. Goodman, it was kind of hard to tell who had a judgment and who was trying to collect it. The answer is nobody has a judgment. We had judgments. West Suburban had judgments. And after your previous decision in the 2014 appeal, we moved to vacate them and they were vacated. So we're not trying to collect a judgment. Mr. Goodman keeps talking about, well, all we're trying to do is collect. It's like collecting on a judgment. They have no judgment. So let's talk about the surplus petition, because the surplus petition, which was never presented and not ruled on, was relevant to res judicata. On the final ground that Judge Fullerton denied the motion to reopen was that it wasn't going anywhere because the surplus claim was precluded. And in this respect, advantages in a box. Surplus petitions are specific creatures of statute that are governed by Section 1512d. If it's not covered by 1512d, it's not a surplus petition. It's something else. But a 1512d surplus petition has to be directed to the sheriff or maybe the clerk of court if the sheriff had transferred the proceeds. That's what it says. The sheriff and the clerk of court don't have any money in this case. Advantage has conceded that. In fact, they insist on it. So it's not a surplus petition that they're trying to make. It's a claim. If it is, it's a claim for money against a private party. It's not a surplus petition. The problem they have with a claim for money is that they made one in Cook County. Mr. Goodman, in his entire argument, appeared to pretend that the Cook County lawsuit never existed, but it did. It's the same parties. It's the same parties. It's the same line of credit. It's the same default. It's the same process server problem. It's the same case. It's the same res judicata. It is. It's the same res judicata. And their answer to that in their briefs and here today is we never said surplus in the Cook County case, but as the Court knows, it is clear res judicata bars claims that you made or claims that you could have made. And it may be that they still have the right to file a 1512d proper surplus petition against the sheriff, except it won't do any good because everybody knows the sheriff doesn't have any money. But what that leaves them with is a claim against a private party for money they believe they are owed, which is exactly what they filed in Cook County and lost, and their appeal died, and it became final. And, in fact, there are two places in the record where Advantage essentially conceded that. If you look at Common Law Record, page 2128, in the original, the original hearing before Judge Fullerton in 2018, Judge Fullerton asked the question that I think you asked Mr. Goodman. He said, couldn't you have made this claim in Cook County? And Mr. Goodman's colleague said, possibly. That's the end of it. In the reconsideration hearing, which is not in the Common Law Record, but is attached to Advantage's brief, he asked her the same question. Isn't that what you tried to do? She said, we're looking at these 21 properties, and we haven't even done the calculations yet to find out how much is owed to us on each property. And he said, but didn't you try to do that before? And she said, well, but not through a surplus motion. That's the end of it. So they're coming at it in a different way. It's a different theory. But a different theory won't beat res judicata. You could call it at one point in their brief, they say, no, this is tort damages. They can call it restitution, which is what they called it in Cook County. They're the same parties. Same parties, same facts, same default, same everything. There's one piece of property that isn't in the Cook County case, one house, I guess. But it could have been also. So when they lost in Cook County, they lost what they're trying to do now. And, again, I want to emphasize the way this case, the way Judge Fullerton decided this case. On jurisdiction and on law of the case, he was talking about the motion to reopen. It's all he really ruled on. He only got to the question of surplus when he got to res judicata. And his point there was, there's no point in reopening this case for another reason. Not only can I not do it because I don't have jurisdiction, not only can I not do it because they're too late, but there is no point in doing it because if I reopened it to consider the surplus game, it would be barred by the result in Cook County. I think I may have covered everything. If I may have a moment. I believe that's all, unless you have questions, Your Honors. Any other questions? Questions? No, sir. Thank you. I'd like to begin by stating the thing that I was going to state when I was up here the first time that I had forgotten. And I think it's fair reply because it stems naturally from something Mr. Pertocci just said. In fact, that's what jogged my memory. The second reason why the surplus petition was arguably premature, in addition to the fact that advantage three was still pending at the time we filed it, was because the dollar amounts hadn't necessarily crystallized because West Suburban hadn't yet paid them into the clerk of the court, into escrow with the clerk of the court, or into escrow with any sales officer. And they still haven't. Right? And Mr. Pertocci... Do they have to? Sure. In order to get to that point? Sure. Here's what normally happens. One house. One sale. Right? $200,000 mortgage. $250,000 sales price. Ignore, like, sheriff fees and stuff. The $50,000 gets paid by the sheriff of DuPage County, the sheriff of the county, or the private company, or whoever, to the clerk of the court. So it's an escrow. Right? Here, they never did that. And no clerk, no judge, no sheriff, no private sales officer caught them because they were the ones who needed to keep track of the marshaling of assets. They didn't keep track of it. Mr. Pertocci sort of chuckles with a sort of lawyerly relish in the briefs that, you know, we couldn't bring a surplus petition because they didn't they never paid the money into the escrow or to the clerk of any court. And he says that surplus petitions are purely a function of the statutory section. That's wrong. I mean, the court sitting in equity, a chancery court, has the inherent authority to order someone to refund a surplus. This happens from time to time. So that's why you're saying it's premature. Well, it's arguably premature. But this happens from time to time, right? There's a replevin. There's a foreclosure. There's a surplus. It doesn't matter whether the statutory section applies perfectly. A judge sitting in chancery has the inherent authority to order someone who's holding surplus funds to disgorge them to the rightful owner. Second, the Cook County case was silly. The restitution case was silly. And we explained why in our briefs. You know, unfortunately, Mr. Cusper's dad, I can't ask him what he was thinking. But the debt was owed, right? So West Suburban Bank had the right to foreclose on these properties. The fact that they did it in an extraordinarily sloppy way in several respects is a different issue. But we did not and could not have raised the surplus issue in the Cook County lawsuit before judgment grabbed because you can't collaterally seek post-judgment remedies. Post-judgment remedies, by definition, are sought in the case where one obtained the judgment. Now, here it's a little different because there were 25 different judgments. And then the Supreme Court consolidated 24 of the 25, right? And that segues naturally to the next problem with what Mr. Bertocci said. Mr. Bertocci said, oh, my partner, Ms. Tavra, conceded they could have brought this in Cook County, blah, blah, blah. Of course she said that, right? Because the Illinois Supreme Court, for whatever reason, and at West Suburban's request, this was not our idea, consolidated 24 of these 25 cases in DuPage, left the 25th case in Cook County. So we could have brought a surplus petition under the aegis of the case that remains in Cook County before Judge Sullivan. We chose to bring it before Judge Fuller – well, actually, we didn't bring it before Judge Fuller. They took a substitution – West Suburban took a substitution of Judge. But we chose to bring it in DuPage before the consolidated – you know, before the judge presiding over the consolidated cases because we reasoned that the Supreme Court had consolidated 24 of these 25 cases in DuPage over our objection. And so if we had a choice between Cook and DuPage, we ought to proceed in DuPage. My office in Chicago certainly wasn't for my convenience, right? That's why we brought it in DuPage. So Ms. Tavra's acknowledgment that we could have brought it in Cook is not a concession at all. You know, the last thing I want to say is that – is that, you know, he says that the – you know, our position is, you know, put it in a box, is that we were really trying to open – you know, reopen the case, not file a surplus petition. His box is basically his coffin. This is on page 2 of our reply brief. We quote from page C-2226. This is an argument we made to Judge Sullivan below. It is not necessary to reopen the case. A surplus petition is by definition available after a final judgment approving a sale. That was the argument that we made in our initial reply brief. We then reiterated that argument in our briefs on the motion to reconsider, where we brought the court to Judge Fullerton's attention, this first district's decision in Talaganov – Talaganov, I don't know – that supports the proposition that there's no 30-day limit. Courts don't lose jurisdiction over surplus petitions. No different – no different than a citation. No different than anything else. Lastly, the idea that they – that he – that Mr. Bertocci raises, that he can somehow vacate the judgment and defeat the surplus petition, was explicitly rejected by this court in a case involving West Suburban Bank, West Suburban Bank v. Laderman, which is cited in our briefs. Right? Surplus petitions are available in common law. The bottom line here is that they should not be able to keep $3 million of our money without us having a hearing on whether they can keep $3 million of our money. Thank you. All right. Thank you both for your arguments. Very interesting this morning. We will stand at recess until the next case at 10.30, and a decision will issue in due course.